Good morning everyone. We're here today for oral argument. We're going to begin with appeal numbers 24-3165, 24-3246, and 25-1020, Economan v. et al. v. Luttrull et al. We're going to begin with oral argument and Mr. Shaw will start with you. May it please the Court. Waley Shaw for the Federal Defendants, Gary Wisnand and Tonda Cockrell. I'd like to begin with qualified immunity as to Plaintiff's Fourth Amendment claim. Now even after taking out any alleged false statements and adding in any alleged material omissions, here are some uncontested facts that remain in Mr. Wisnand's hypothetical affidavit. Mr. Economan, who was known as the Candyman, was the third highest prescriber of controlled substances in the state of Indiana. In 2014, his patients obtained more than 1.2 million hydrocodone tablets based on his prescriptions alone. Witnesses said that two-thirds to three-quarters of his practice consisted of patients getting narcotic refills. A series of witnesses said that he prescribed narcotics and controlled substances without physical exams and that he saw patients for five minutes or less. He used pre-signed prescriptions. He prescribed patients controlled substances when it was clearly inappropriate, such as when family members called to say the patient was abusing, overdosing on or selling their medications, when patients failed drug screens, when pharmacists called to say patients were getting duplicative prescriptions from other physicians, and when patients asked for refills before they were due. Now this court and Indiana courts have repeatedly relied on exactly this type of evidence, not just to find probable cause, but to sustain criminal convictions for crimes like the one at issue here. Now Mr. Economan's objections go principally to credibility, that some patients were charged with controlled substances offenses, that they were taking other illegal drugs, that they were getting the same kinds of drugs from other physicians. That's unsurprising because one of the allegations here is exactly that Mr. Economan was prescribing controlled substances to patients who were clearly abusing those drugs. But ultimately, even if there are credibility problems with any particular witness, the sheer volume of witness accounts that corroborate each other and say the same things about Mr. Economan's behavior provides more than enough corroboration to establish probable cause. Let me ask, what decision is before us now on review? Is it just the district court's order denying QI and sending the claims to trial? Do we look at the summary judgment order? What's before us? I think what is before the court is the district court's denial of qualified immunity in sending the case to trial on the Fourth and Fifth Amendment claims, thereby denying the right to be free from trial under Mitchell v. Forsyth. Now, the district court also engaged in extensive discussion of the underlying issues here, which are probable cause and whether there was a constitutional violation. It wasn't always framed as a qualified immunity analysis, but the parties extensively litigated those issues, and the district court did decide them. Here, that's important because if there is probable cause, then there is no constitutional violation, and if there is no constitutional violation, then the federal defendants are entitled to qualified immunity. Mr. Shaw, would you mind if I ask you a similar question? Yes, I would not mind. As you stand there right now, what do you think we need to decide for your clients? The reason I'm asking this is, I'll just speak for myself, I've had a tremendous difficulty figuring out what exactly is before us. So, this question is going to come to everybody. For the parties that you represent, what do you think we need to decide, and as to who? I think with respect to my clients, which are Mr. Wisnand and Ms. Crockerall, this court needs to decide that Mr. Wisnand was entitled to qualified immunity on the Fourth Amendment claim, and therefore, that claim should not go to trial, and as to both Mr. Wisnand and Ms. Crockerall, that they are entitled to qualified immunity on the Fifth Amendment claim, and likewise, that that claim should not go to trial. Was that appealed, is that in your brief, the denial of QI as to Crockerall's Fourth Amendment violation? Oh, no, I'm sorry, we did not raise that claim, we did not raise that argument in this appeal. It is not in our brief, and we're not pressing that argument. What argument? The argument that Ms. Crockerall was entitled to qualified immunity as to the Fourth Amendment claim. So, as to Ms. Crockerall, we're only asserting qualified immunity as to the Fifth Amendment claim. In terms of the, let me just pause. I think you all mean Fourteenth Amendment. The Fifth Amendment doesn't even apply to the states. It hasn't even been incorporated against the states, and we're talking about state actors, so I think in the whole case, we're talking about the Fourteenth Amendment? I think that's certainly a very strange thing about this case that the parties haven't fully, you know, developed, but yes, I do think that there's an argument that the Fifth Amendment doesn't apply at all, because this is a claim under Section 1983, which obviously requires constraints. Well, against predominantly state actors, not federal actors. Right. Right, and Section 1983 requires action under color of state law. Now, obviously, my clients are, you know, acted in, you know, they have federal roles that they were performing at the time of the alleged violations, but I think given that this is a Section 1983 case, this court could decide that the Fifth Amendment doesn't apply at all. Judge Pryor, did you want to? No, I'll ask. On page 20 of, thank you, Judge Brennan, of Docket 225, the Judge Lund found that Wisenhan had admitted that he had no evidence to support the strips of the details essential to finding a probable cause. You're accepting that finding? I think, yes, I mean, we're happy to accept that for purposes of establishing this court's jurisdiction, or at least for purposes of this appeal, but I just want to be clear, first, that that is irrelevant to the ultimate determination of a probable cause, because it's an objective inquiry, and second, I think that mischaracterizes the testimony. Really what Mr. Wisenhan was saying was that he didn't recall the elements of the crime and he couldn't recall at the time what evidence he had at the time he wrote the affidavit, which was seven years before the deposition. Now, later on, he does remember some things, and he goes on to say those in his deposition, and we identify those things in our record, but again, I think that's a misunderstanding of the deposition, but again, even if this court accepts that finding that his statement was false, it doesn't make any difference to the probable cause analysis. Thank you. Thank you, Mr. Shaw. With that, we will be giving you a brief rebuttal time. Thank you. Thank you. We'll next hear from Mr. Ziegenfuss. Good morning, Your Honors. May it please the Court, Jake Ziegenfuss on behalf of the appellant Garrison Law Firm. As it pertains to jurisdiction, Your Honors, Garrison Law Firm believes this court does have jurisdiction to entertain the merits of Garrison Law Firm's appeal, applying the two-pronged test which governs jurisdiction in interlocutory appeal cases. The denial of qualified immunity as it pertains to Garrison Law Firm was not based on disputed facts, and in tandem with that, Garrison Law Firm is accepting the facts of the district court as true for the purposes of this appeal. What do you think we need to decide as to the Garrison Law Firm? As it applies to Garrison Law Firm, it's whether Garrison Law Firm knew or should have known that their actions violated a clearly established constitutional right, and that's the prong that's put forth in Ashcroft and Plumhoff, essentially whether Garrison knew by the filing of their civil forfeiture complaint, which contained the affidavits of Wisenan and Cockrell, whether they knew or should have known that that false information that contained that  So the Garrison Law Firm's relevant to the civil forfeiture complaint, what everyone's calling a Fifth Amendment issue? Yes, Your Honor. Okay, all right. Yes, Your Honor. And explain this a little bit deeper as my colleague just- Can you restate that for us, though? You were in the middle of your thought, explaining that the Garrison Law Firm should have- The issue was whether Garrison Law Firm knew or should have known that there was falsehoods contained in the Cockrell affidavit, which they attached to their civil forfeiture complaint, and I think the issue with that is that that knowledge or perspective knowledge is being retroactively applied and imputed upon Garrison Law Firm from the deposition that occurred seven years later. It was not conveyed to Garrison Law Firm at the time of the filing. But there's a finding by Judge Lund that at the time that the affidavit was filed, Garrison Law Firm was aware that the affidavit was false. Your Honor, I believe the evidence in the district court is solely based upon the deposition which occurred seven years later. There's really no fact in the district court's opinion that demonstrates contemporaneous knowledge that Garrison Law Firm knew or should have known at the time of the filing. It wasn't until Cockrell and her deposition attested to the fact that she didn't have good cause to- So you're contesting the conclusion? Essentially, yes, Your Honor. Not disputing the facts, but just the fact that it does not fit the second prong in that Ashcroft standard which would deprive Garrison Law Firm of qualified immunity. So essentially, the facts as the district court laid out was Garrison Law Firm met with Cockrell, drafted the affidavit, sure, not disputing that, but met with Cockrell, gave her the opportunity to review, read, sign, and the facts demonstrate that that occurred. However, Cockrell attested to the veracity of the statements and Garrison Law Firm submitted it to the court, which is quite common practice, I believe, for law firms across the country is to rely upon the veracity and truthfulness of the affiant, should the affiant attest to the truthfulness. So there's nothing to support the conclusion that Garrison Law Firm knew that the affidavit was false? Yes, Your Honor. And I believe this is still a pure issue of law, the McGee case goes into that, they actually gave an example of the second prong in Ashcroft being a pure issue of law that is within the purview of this court on review of an interlocutory appeal. And that prong is either inquiry in the Ashcroft standard is answered in the negative, which or the second prong should be answered in the negative. In Garrison Law Firm's opinion, the defendant official is entitled to qualified immunity. Would you like to reserve the remainder of your time? Yes, sir. Thank you very much.  Thank you, Mr. Ziegenfuss. We'll now move to Mr. Comer. Thank you, Your Honor. Evan Comer on behalf of State Defendants, James Lettrell, and Jessica Krug. Just to kind of preemptively answer Judge Scudder's question, the issue before this court, at least as far as State Defendants are concerned, is whether they are entitled to absolute prosecutorial immunity, and if not, then whether they are entitled to qualified immunity. The district court's judgment has to be reversed in this case because the court below failed to conduct the defendant by defendant, claim by claim immunity analysis that case law requires. Had the court properly analyzed the State Defendant's immunity defenses, the undisputed material facts would have shown that State Defendants were shielded from liability under at least qualified immunity, and if not, then prosecutorial immunity. This court has jurisdiction to consider this issue because the appeal involves the purely legal question of the district court's failure to apply the proper standard, and in fact, this court recently decided this exact same issue in Mabes v. Thompson earlier this year. I know we've talked a lot about qualified immunity, but I do want to touch on prosecutorial immunity since I believe I'm the only party in this case representing clients who raise that issue. Just looking at the complaint issue authored by Plaintiff's Inquirer, it's clear that the through line running from the allegations to the summary judgment briefing to even now the briefing on appeal is that they are seeking to hold Luttrell and Crew liable for actions they took to initiate a criminal case, a civil forfeiture case, and a medical licensing case before a state administrative agency. Those are claims that are shielded from or that my clients are shielded from liability from those claims under Embler, under Kalina, under this court's decision in Mendenhall. This court doesn't even need to look beyond those because when we look functionally at what Luttrell and Crew are doing, they are initiating legal proceedings to enforce state laws, which is squarely within the prosecutorial function. As this court held in Whitlock, the Supreme Court requires a showing that a prosecutor must investigate and fabricate evidence against a target to automatically defeat absolute prosecutorial immunity. There's no evidence disputed or otherwise in this case that indicates that Luttrell and Crew were actively involved in the fabrication of evidence, that they were aware of the fabrication of evidence. And the standard that the district court applied in order to kind of swat away our absolute immunity defense misapplies what Embler says because what the court did, well first of all the court didn't even consider Crew as a prosecutor, which is squarely contrary to Butts versus Economo. And then second of all, it applied a standard that Luttrell had to act in a purely prosecutorial manner throughout the pendency of the case. The court appears to have adopted the position that any administrative or any investigative activity on behalf, on Luttrell's part, defeats prosecutorial immunity at any stage of the case. And what Embler, what Buckley, what Kalina all say is that we look at the role the prosecutor played at the time the challenged acts occurred. And here the role that Luttrell played at the time the challenged acts occurred was he filed, he initiated a criminal case, he initiated, he approved the filing of a civil forfeiture case, and Crew initiated a state administrative case. And so because those all fall squarely within the core prosecutorial function, our position is that both Luttrell and Crew have absolute immunity from damage or from suit in this case. And this case can be decided on that ground without the need to get into qualified immunity. But even if the court finds that there is some reason to reach qualified immunity, I would just point out that throughout the course of this case, plaintiffs have not shown any clearly established right at issue, at least not with respect to the claims against Luttrell and Crew. The closest they come is Whitlock, which involves a prosecutor who was directly involved in the fabrication of evidence prior to the initiation of a criminal case. Here we don't have any of that. At most, what we have is Luttrell unwittingly including false evidence within an affidavit. And that's... I'd like to reserve the remainder of your time. Yes, Your Honor. Thank you, Mr. Comer. We'll now move Ms. Kueffner to you for argument on behalf of the appellee. Thank you. May it please the court. My name is Jillian Beverly Kueffner, and I represent Dr. Kahneman and his former medical practice, Kahneman and Associates Family Medicine. I would start by pointing this court's attention to the fact that qualified immunity was not an issue raised at summary judgment. For example, Ms. Krug and Mr. Luttrell requested qualified immunity and absolute immunity for owning the criminal case and the licensing. They specifically do not address the forfeiture cause. This is a complicated case based on the number of players that are involved. But what's important for the court to remember is that the civil forfeiture was filed over a year prior to any criminal case being filed. So we have this giant window of time in between the forfeiture and the criminal proceedings. Wisenand and Cockrell never make an argument for qualified immunity at summary judgment. You won't find it in the summary judgment motions. It is simply just not there. Mr. Garrison from the Garrison Law Firm makes no argument for qualified immunity in his summary judgment briefing. It is simply not there, which is why we raised in our response to this appeal, just like under Lovelace, we must first ask, where did they raise these arguments to the district court? They did not. That was a choice that they made, and it is our perspective that they have waived those arguments now here. They are trying to tell this court that there is jurisdiction based on an argument that was not addressed prior. It is true that Judge Lund did address absolute and qualified immunity in her order at the very end of a 33-some-odd-page order, and she applied the principles to each and every one of the actors in this case and found that they were ineligible. What Judge Lund found was that each and every one of them drafted, reviewed, submitted affidavits to a court which they knew they did not have evidence to support. Any argument now that they somehow did not know is contrary to her findings in that order, and it is asking this court to look away at what Judge Lund found based on the mountainous briefing and all of the mountainous facts, statements of facts and responses, and come to an opposite conclusion. Ms. Kiefner, can I ask you a couple on that point, not so much on the waiver of qualified immunity, but on the substance of the challenges to Investigator Wissanand's affidavit? It seems to me, from looking at your brief and looking at the district court's order, that what Investigator Wissanand admitted to after the fact was that there was no evidence that he had no evidence of Medicaid fraud, money laundering, et cetera, et cetera. My question is, has Investigator Wissanand admitted that the factual information in his affidavit is false? Yes, and in fact, he did that while the case was live in 2018. Where is that admission at? Well, he admits a variety of things in that 2018 deposition. We spent about... 2018 or 2022? 2018. He was deposed in 2018 while the civil forfeiture case and the criminal case were live and pending, as was Ms. Cockrell. Then we have depositions that were taken throughout the course of the underlying suit in the district court. Okay, because I very much read him to be acknowledging certain things with respect to, did you have probable cause of Medicaid fraud, et cetera, et cetera. I think you're right to say he gave acknowledgments on those points, but he seems to stand behind the factual information in the affidavit. In other words, I don't see anywhere where he said, I made this up. I falsified this. I intentionally lied about that. I don't see anything like that. And the reason I'm asking you that is your argument strikes me as one that is focused on whether a search warrant affidavit supplied probable cause to believe certain crimes were  Okay? I mean, I can read you passages in your brief, but that's the way it comes across to me. But of course, that's not what the affidavit in the search warrant was submitted for. The affidavit submitted at the search warrant phase was in support of an application for a search warrant. And it's not required that there be probable cause to believe X, Y, or Z crime was committed, but rather probable cause to believe whether this thing, this place, this person to be searched would contain evidence of a crime. So it almost seems, correct me if I'm mistaken, but it almost seems that the whole challenge to the Wisson and affidavit has been misdirected. It's not asking the right question. It was never submitted for an arrest. No, Your Honor, but it was submitted for the purposes of seizing every asset in Dr. O'Connorman's name under Indiana forfeiture laws. It was submitted to provide, to support, or to ask a judge to make a probable cause finding as to whether certain places, I think maybe him himself could be searched, correct? Originally, Your Honor, and then that same search warrant affidavit was attached to the various cockerels as the basis for the forfeiture. Okay, so I know that. There's a two-pronged challenge of it. The use of the Wisson and affidavit for the searches, correct? Correct. And then for the civil forfeiture of the bank and investment accounts. Correct. Because it was incorporated by reference into the, whatever we call it, the cockerel affidavit or something, cockerel application for civil forfeiture. Yes, and submitted to the court saying that there was, that Dr. O'Connorman had committed a crime under 3424-2, corrupt business influence, as evidenced by Wisson and's affidavit, and then... Okay, focus on the search warrant application for a minute. Forget the civil forfeiture for a second, okay? I know that's in the case. We'll come to it. Isolating the search warrant application. Do you agree that the search warrant application was submitted for one and only one purpose, to try to establish whether there was probable cause to believe that the places or people being searched contained evidence of crime? Originally, yes. I do believe that is why it was submitted. Forget originally. Yes. Is that why it was submitted, or was it submitted to arrest him for having committed crimes? No, it was submitted for the purposes of a search warrant. Okay, so if it's submitted for the purposes of a search warrant, then his admissions, his acknowledgements, call them whatever you want to call them, that there was not probable cause to believe that there's Medicaid fraud committed, or that this or that crime was committed, that's not answering the right question. The question is whether the factual information in the affidavit supplies probable cause to support a search. Yes, Your Honor, but when it was submitted in the civil forfeiture, that was the purpose of it.  I'm not talking about the civil forfeiture. I'm talking about the search itself, and the reason I'm talking about the search, unless you correct me if I'm wrong, I'm under the understanding, as we sit here right now, that there are Fourth Amendment challenges before us to the searches. Maybe I'm mistaken, but there's a whole bunch of briefing. No, Your Honor, the Fourth Amendment challenges are to the civil forfeiture, the seizure. Not at all to the searches of his home or business? No, we did not bring that claim. I missed that. Wow. All right. It would have helped to have that clear before this morning. You made an argument that the QI has been waived. What are we to do with the district court's conclusion, albeit one sentence, on QI? Well, Your Honor, I believe the mere fact that it's included in that order does not necessarily allow this court to have jurisdiction. It's a conclusion by a district court that's on review that the parties have argued. We can't ignore it. No, but the reasoning behind Judge Lund's mentioning of qualified immunity was that the fabrication of evidence has long been found to be a constitutional violation. That was the conclusion, the legal conclusion, that she came to. So, to the extent that this court accepts jurisdiction of this appeal, the issue before this court would whether it be individuals who knowingly, together, jointly draft and to support if that fabrication is the violation of a clearly recognized constitutional right. What are the material facts, going back to Judge Scudder's question on the probable cause for the civil forfeiture? What material facts were made? In Mr. Wisenand's? What facts did he make? I'm sorry, Judge. I'm trying to… In order, what material facts remain for the court to need to be able to answer the question as to whether or not Mr. Wisenand would be entitled to qualified immunity? Well, this is an interesting case, Your Honor, because as Judge Lund found, while there may be facts that are in dispute, they were not genuinely disputed. You can read her order that way. And that she found that no reasonable jury could ever decide otherwise, which is why she entered summary judgment sui sponte on many of the claims in Dr. Kahneman's favor. To walk that back into which material facts are disputed genuine or not, just as counsel brought up the INSPECT records, the Indiana database that allows prescribers, doctors to be able to track who receives what, that has been a clearly disputed issue between the parties for quite some time. Judge Lund's order does not go into all of the omitted evidence that we outlined in our response to their statement of material fact. Her order does not address that. She simply cited, I believe, approximately 67 times to the defendant's own testimony, either while the underlying cases were live and happening, or their testimony taken at deposition in the underlying district court action. So from our perspective, there are no material facts that are still in dispute at this point. And we agree with Judge Lund that no reasonable jury could find otherwise. I would point out to the court that probable cause for the forfeiture in Indiana is not just based on probable cause that a criminal offense or corrupt business influence exists. There also has to be a nexus to the property in which you are seeking to seize. We have asked throughout the underlying case, repeatedly, and counsel has never been able to answer, for what crime was there probable cause on July 29th of 2015 that Dr. Kahneman had committed? Which patient, which prescription, and how do you connect that crime, if there is probable cause for that crime, to seizing every asset that he had in his name for the next 3.5 years? Where is Kahneman now? He is 75 years old and he is living in Michigan. Is he licensed to practice medicine? He retired his license, Your Honor. Any current penalty phase or any type of investigation undertaken with regard to him currently? No, Your Honor. So, I just want to, I got to tell you, I'm really confused. As we're in the courtroom now, you are not intending to raise any challenge that is based on the Fourth Amendment to anything other than the civil forfeitures? Correct, Your Honor. Okay. Okay. Is there anything in your view that we need to decide regarding the Indiana Medical Licensing Board? The, um, no, Your Honor.  Alright. What we have always claimed, and it is repeated in our complaint 19 times, and as Judge Lee noted in his orders on the motions to dismiss, is that this was a conspiracy put in place to fabricate affidavits before the court, both in Ms. Cockrell and in Mr. Wisenand's, in order to unlawfully deprive Dr. Kahneman of all of his funds, or in other words, to shut him down, as the testimony has been. And that there was no connection to any allegations of criminal activity that would have ever justified, or you could ever find probable cause to seize all of Dr. Kahneman's funds. What Judge Lund did do, and she mentions the mountains of briefing that she had to pour over, was come to the only reasonable conclusion in this case. An official who causes a constitutional violation, as we said in our brief, and sets in motion a series of events is exactly what has been at the heart of this case. And as Judge Lee had found, the conspiracy has always been the heart of Dr. Kahneman's case against these defendants. Briefly, let me insert before the time runs, are you conceding that Luttrell is entitled to absolute immunity? I didn't see a reference to it in your brief. No, Your Honor, he never made a request for absolute immunity at summary judgment in regard to the civil forfeiture proceeding. Only in regard to the medical licensing and the criminal case. And I believe we point that out in our brief as well. Thank you, Ms. Kueffner. Thank you. Mr. Shaw, we'll move to you with a minute for rebuttal. Thank you, Your Honor. I'll try to be as brief as possible. I just have four quick clarifying points. Again, whether or not Mr. Wisnan thought he had probable cause at the time is irrelevant because it's an objective inquiry. Second, the district court... Probable cause. Mr. Shaw, what do you think he's being sued for? For a violation of the Fourth Amendment. For doing what? I'm really confused about what the claim is against him. For submitting an affidavit that allegedly contained false statements and material omissions. To a judge in request for a search warrant? Yeah, I mean, I also thought that was part of the case, but I also acknowledge that the other claim, or at least one aspect of the claim related to the civil forfeiture proceeding, as I understood it. And so, it was a submission of the same affidavit for...  Or at least taking... Before the oral argument started this morning, did you think Mr. Wisnan was... What? That there was an attempt to pursue a claim for money damages against him under Section 1983 for submitting a false or misleading affidavit to a state court judge in support of a criminal search warrant? It was unclear what plaintiffs were arguing. And so, I think we actually... There's a section in our opening brief that addresses this where we say, you know, it's unclear what they're referring to, but here's the analysis and it would apply to both proceedings if necessary. So, I... It's the same affidavit. I get that. But it's... And this litigation has been going on a long time. And it is not made easy by the fact that we're sitting here trying to figure out who has been sued for what. Right. It's clear that it was submitted for the search warrant application proceeding and then he was just asked to sign another version for purposes of the civil forfeiture proceeding and he did so. You had a couple other brief points. Yes. In terms of what the district court thought it was deciding, I don't have time to read from it, but I would refer the court to docket 290 of... In the district court docket where it makes clear the district court thought it was denying qualified immunity from trial. In terms of what crimes, what patients, there are many instances referred to in the briefs, but I would... In the affidavit, I would look for the testimony as to Stacy Lawson and Amber Pulley. And then finally, the point that the qualified immunity analysis is just about whether there was fabrication of evidence. That's not correct. It's about whether if there was false statements or material omissions, the question is what... Would there still be probable cause if you take out the false statements and add in any alleged material omissions? And you need that to establish a constitutional violation. And without that, there is... Federal defendants are entitled to qualified immunity. Thank you. Thank you, Mr. Shaw. Mr. Ziegenfuss, one minute for rebuttal. Thank you, Your Honors. Just one point of clarification here. Apelli noted that qualified immunity was not argued at summary judgment. Garrison Law Firm did raise that on docket 161, page 17. That argument was regarding state actors, and if they were found to be a state actor, they were entitled to qualified immunity. That was raised, and Apelli had the opportunity to respond to that. They briefed it. I think it was three and a half pages of summary judgments. There was ample opportunity to respond. They did so and would ask there be no waiver on that topic. That's all I had. Happy to answer any questions on that. Thank you, Mr. Ziegenfuss. Mr. Comer, we'll move to you now. One minute for rebuttal. Thank you, Your Honor. Just briefly, with respect to whether we waived absolute immunity, our motion for summary judgment states that we were asserting that defendants are broadly entitled to absolute and qualified immunities. In fact, we said, quote, defendants did not violate any federal rights of plaintiff or otherwise were not sufficiently involved in any alleged deprivation. What docket are you reading from? 180 at pages one through two. Then in our reply brief, we clarified that we were referencing both the criminal and forfeiture proceedings. That's docket 206 at page six. We believe that the issues are adequately preserved. Judge Pryor, just to pick up on where you left off at the end of my colleague's  the other side has never contested the merits, has never attempted to defend the merits of the district court's prosecutorial immunity argument or holding. And we believe that that is the cleanest way to resolve this case on the merits. So thank you. Thank you, Mr. Comer, Mr. Ziegenfest, Mr. Shaw, Ms. Kaeffner. The case will be taken under advisement.